IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 15, 2011

**STATE OF TENNESSEE v. DARIUS J. HUNT**

**Direct Appeal from the Criminal Court for Knox County**
**No. 93594     Jon Kerry Blackwood, Judge**

**No. E2011-01238-CCA-R3-CD - Filed March 20, 2012**

Defendant-Appellant, Darius J. Hunt, appeals from the Knox County Criminal Court's order revoking his probation. Hunt pled guilty to one count of possession of half a gram or more of cocaine with intent to sell. He received a suspended sentence of eight years following one year of confinement. On appeal, Hunt claims that the trial court abused its discretion in revoking his probation and in ordering him to serve the sentence in confinement. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Mark E. Stephens, District Public Defender; John Halstead, Assistant Public Defender, Knoxville, Tennessee, for the Defendant-Appellant, Darius J. Hunt.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Randall E. Nichols, District Attorney General and Phillip H. Morton, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**Background.** In March 2011, a warrant was issued alleging that Hunt had committed the new offenses of driving on a suspended license, reckless endangerment, evading arrest, violations of the financial responsibility law and state registration law, and leaving his vehicle unattended. It also alleged that he had failed to obtain employment and make payments toward court costs, fines, and probation fees.

At the revocation hearing, Officer William Thompson of the Knoxville Police Department testified that on February 24, 2011, he witnessed a white Caprice leave the Austin Homes parking lot at a high rate of speed. He saw that the car lacked a "tag light" and followed the car. Hunt, the driver, began to exit the car while it was still moving. Officer Thompson activated his emergency lights to stop him. Hunt fled on foot and was eventually apprehended. Hunt's car, however, continued to roll approximately a quarter of a block and stopped near three people standing on a sidewalk. Officer Thompson testified that Hunt's actions placed others in danger. Officer Thompson also later determined that Hunt's driver's license was suspended.

On cross-examination, Officer Thompson testified that he learned about the people on the sidewalk from a security officer who witnessed the events. He did not see the people, talk to them, or know their names.

Suzanne Green, Hunt's probation officer, began supervising him in January 2011. Hunt informed Green that "he was getting a job," but Green had been unable to verify it. Hunt had been unemployed from December 2010 until the date he committed the new offenses. He also failed to pay his fines or costs. In all other respects, Hunt had complied with the terms and conditions of his probation. He was initially referred for administrative case review; however, Green sought a violation warrant upon request from the District Attorney's Office.

Following the testimony, the trial court revoked Hunt's probation. It stated

> Court finds by a preponderance of the evidence that you have violated your terms of probation then and you have picked up new charges involving driving on a suspended, [sic] license and reckless endangerment.

In a written order filed the following day, the court stated, "[T]he court finds that the defendant has been guilty of violating the laws of this State, and has otherwise violated the conditions of his probation." The court ordered Hunt to serve the balance of his sentence in confinement. This timely appeal followed.

**Analysis.** Hunt argues that the trial court abused its discretion in both revoking his probation and ordering him to serve his sentence in custody. He asserts that the State failed to prove by sufficient evidence that Hunt had committed the new offenses of driving on a suspended license and reckless endangerment. The State responds that the trial court properly exercised its discretion in revoking Hunt's probation and returning him to custody. We agree with the State.

A trial court may revoke probation and order the imposition of the original sentence upon a finding by a preponderance of the evidence that the defendant has violated a condition of his or her probation. T.C.A. §§ 40-35-310, -311(e) (2009). Probation revocation rests within the sound discretion of the trial court. State v. Kendrick, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005) (citing State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991)). A trial court's decision to revoke probation will be upheld absent an abuse of discretion. State v. Beard, 189 S.W.3d 730, 735 (Tenn. Crim. App. 2005). To establish an abuse of discretion, the defendant must show that there is no substantial evidence in the record to support the trial court's determination regarding the probation violation. Id.

Once the trial court has determined a violation of probation has occurred, it retains discretionary authority to order the defendant to: (1) serve his sentence in incarceration; (2) serve the probationary term, beginning anew; or (3) serve a probationary period that is extended for up to an additional two years. State v. Hunter, 1 S.W.3d 643, 647 (Tenn. 1999). Additionally, under Tennessee Code Annotated section 40-35-310(b), the trial court

> may also resentence the defendant for the remainder of the unexpired term to any community-based alternative to incarceration authorized by chapter 36 of this title; provided, that the violation of the defendant's suspension of sentence is a technical one and does not involve the commission of a new offense.

T.C.A. § 40-35-310(b). The determination of the proper consequence of the probation violation embodies a separate exercise of discretion. Hunter, 1 S.W.3d at 647; State v. Reams, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007).

Upon our review of the record, the trial court did not abuse its discretion by revoking Hunt's probation. In order to establish a violation of probation based on the commission of a new offense, the State must offer proof by a preponderance of the evidence showing that a defendant violated the law. See State v. Catherin Vaughn, No. M2009-01166-CCA-R3-CD, 2010 WL 2432008, at *3 (Tenn. Crim. App., at Nashville, June 14, 2010) (noting that proof of a conviction is not necessary). In addition, the State "must present sufficient facts at the revocation hearing to enable the trial court to 'make a conscientious and intelligent judgment as to whether the conduct in question violated the law.'" State v. Jason L. Holley, No. M2003-01429-CCA-R3-CD, 2005 WL 2874659, at *4 (Tenn. Crim. App., at Nashville, Oct. 25, 2005) (quoting State v. Harkins, 811 S.W.2d 79, 83 n.3 (Tenn. 1991)). We have reviewed the trial court's order and do not consider it restricted to the reckless endangerment and driving with a suspended license, as Hunt suggests. At a minimum, each order of the trial court encompassed the new offense of driving with a suspended license. Officer Thompson's testimony that he saw Hunt driving while his license was suspended was sufficient evidence that Hunt committed the new

offense of driving on a suspended license.[1] T.C.A. § 55-50-504 (2006) (proscribing driving on a public roadway "when the person's privilege to do so is . . . suspended"). This testimony alone supports the trial court's decision to revoke Hunt's probation for failure to comply with the laws of the State. The officer additionally observed Hunt leave his vehicle unattended as well as evade arrest, both of which further serve as grounds for revoking Hunt's probation. Moreover, it is clear that the trial court properly revoked Hunt's probation for failure to obtain employment. Hunt is not entitled to relief.

Hunt additionally argues that the trial court erred in relying on reckless endangerment as a new offense and failure to pay. However, in light of the above conclusion, any such error was harmless because the trial court properly relied upon the new offenses of driving on a suspended license, evading arrest, and leaving a vehicle unattended. See Tenn. R. App. P. 36(b) ("A final judgment from which relief is available and otherwise appropriate shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."). This alternate ground for revocation supports the trial court's decision. See State v. Brandon Scott Watson, No. M2003-01814-CCA-R3-CD, 2004 WL 1562553, at *4 (Tenn. Crim. App., at Nashville, July 13, 2004) (declining to reverse revocation decision despite finding of error when "an alternate ground exist[ed] for revocation"), perm. app. denied (Tenn. Dec. 6, 2004).

Finally, the trial court did not abuse its discretion by ordering Hunt to serve the sentence in custody. Incarceration was clearly one of the options available to the trial court upon finding that a violation occurred. Hunter, 1 S.W.3d at 647. Hunt is not entitled to relief.

_____
CAMILLE R. McMULLEN, JUDGE

---

[1]Hunt, in passing, argues that the proof of driving on a revoked license was insufficient because it relied on hearsay testimony regarding the status of Hunt's license. This argument is waived for failure to raise it before the trial court. See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Hunt did not object to the use of the evidence during the hearing, and he appears to have conceded that he drove on a suspended license. Hunt stated during his argument to the trial court that "there was proof that he was driving a vehicle when he shouldn't have" and that he "clearly needs to stop driving until he gets his driver's license. There's no question about that."